UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| JAMES CHRISTOPHER HANEY ) | Case No. 10-10258-SSM |
| ) | Chapter 13 |
| Debtor ) | |

**MEMORANDUM OPINION**

Before the court is the objection of Marina Haney, the debtor's former wife, to confirmation of the amended plan filed on April 26, 2010. The objection challenges the failure of the plan to pay priority claims in full. It also resurrects a previous assertion that the debtor's chapter 13 case was filed in bad faith solely to stymie enforcement of a final divorce decree. A hearing was held on June 9, 2010, at which both the debtor and Ms. Haney were represented by counsel. After presentation of evidence and oral argument, the court took the issues under advisement. For the reasons stated, confirmation will be denied, but the debtor's case will not be dismissed at this time.

Background

James Christopher Haney ("the debtor") is an ornithologist who was divorced from Marina Haney by a decree of the Circuit Court of Fairfax County, Virginia, on December 10, 2009. The divorce decree imposed several obligations on the debtor and Ms. Haney including (1) that the marital residence be listed for sale and, after payment of the first deed of trust and reasonable closing costs, the proceeds from the sale be divided equally between the parties; (2) that until the sale of the home the debtor is to pay $500 per month toward the mortgage and Ms.

1

Haney is to pay the balance—about $1,363; (3) that various retirement and investment accounts were to be divided among the parties; (4) that the debtor was to pay Ms. Haney $7,000, make a $1,803 payment on a joint Best Buy debt and a $2,399 payment on the Chase Home Equity Line of Credit from his share of the marital residence sale proceeds; and (5) that the debtor was to pay Ms. Haney's divorce attorneys $20,000 for their fees.  Decree at 3-6.

The debtor filed a petition for adjustment of his debts under chapter 13 of the Bankruptcy Code in this court on January 14, 2010, about a month after entry of the final divorce decree. His schedules reported monthly income of $7,661 and monthly living expenses of $5,331.  The debtor filed his first repayment plan on January 27, 2010.  That plan required him to pay the chapter 13 trustee $390 a month for 12 months and then $1,450 a month for 48 months for a total of $74,280 to be paid into the plan.  The estimated distribution to unsecured creditors was 74 cents on the dollar.  Although the plan stated that payments on two mortgages against the marital residence, a car loan, and property taxes would be paid directly by the debtor, that broadly-stated treatment was considerably undermined by a further plan provision which stated as follows:

> Ex-spouse is obligated to pay the major portion of first mortgage payment and all of the interest.  Ex-spouse is obligated to pay majority of home equity line of credit balance. Now on [sic] the debtor is not making any mortgage payments on the house and line of credit. House is currently listed for sale per court order. Sale proceeds will pay all debts, secured by the house.

Chapter 13 plan at Section 11 (Doc. # 10).

Ms. Haney objected to the plan on the grounds that (1) the amounts owed to her under the divorce decree were domestic support obligations and therefore must be paid in full under § 1322(a)(2), Bankruptcy Code; (2) the debtor's bankruptcy case was filed in bad faith; and (3) the plan was not feasible.  Objection at 3-4 (Doc. #15).  At a hearing on April 7, 2010, the debtor testified that he intended to delay paying his required $500 a month contribution to the mortgage

2

until the house was sold. He testified that he wrote a letter to the mortgage lender, ING Direct, and asked them to accept Ms. Haney's partial mortgage payment. Once the sales proceeds were divided, he would pay out of those proceeds all amounts due on his share of the mortgage payments plus any late fees or other charges that had accrued as a result of the partial payments.

On April 9, 2010, the court entered an order denying confirmation of the debtor's initial plan. As to Ms. Haney's objections, the court held,

> (a) the case was not filed in bad faith; (b) the debtor's obligation under the final divorce decree to pay Ms. Haney $20,000 as partial reimbursement for her attorney's fees is not a domestic support obligation within the meaning of 101(14A) and is therefore not a priority debt that must be paid in full under § 1322(a)(2); (c) that the plan is not proposed in bad faith solely because it would compromise the attorney's fee obligation; (d) that the $500 per month the debtor is required to make toward the mortgage payment on the jointly-owned residence pending sale of the property is a domestic support obligation that must ultimately be paid in full; and (e) that the plan, as filed fails to specify any treatment for the ultimate payment of the required mortgage payment contribution or of obligations (including the joint Best Buy debt and the $7,000 equalizing award) which the divorce decree requires to be paid from the respective shares of the parties upon sale of the property.

Order at 1-2 (Doc. # 16).

On April 26, 2010, the debtor filed the amended plan that is before the court. It requires him to pay the chapter 13 trustee $250 a month for 9 months, then $350 a month for 37 months, then $535 a month for 11 months. It also provides for a $55,000 lump sum payment in month twelve, which would come from the debtor's share of the sale proceeds, for a total payment of $78,116. From the funds received, the trustee would pay his own statutory commission of 10%, $1,535 to debtor's counsel and $4,602.55 in priority tax claims. The balance of the funds would be paid pro rata to creditors holding allowed unsecured claims, with the estimated distribution increasing from the first plan to 86 cents on the dollar. The debtor would also pay $100.00 on the HELOC to Chase and his regular car payment outside the plan. The relevant provisions of

3

section 11 state:

> In para. 5, ING is being paid $1,365.92 by ex-spouse, and Debtor is not paying his additional share of $500.00. Debtor would pay at the time of closing any partial payments, interest, late fees and other charges accrued from his non-payment of his share of the $500.00 mortgage payment, from his share of net proceeds.  ***  Debtor will pay additional moneys from proceeds [of sale of marital residence] to fund the chapter 13 plan less any debts detailed in the final divorce decree that may need to be paid at closing.

Amended Plan Section 11 at 5 (Doc. # 31).

On June 2, 2010, Ms. Haney filed an objection to the amended plan because it failed to address her priority claim (the $500 a month contribution to the mortgage, among other required payments) as well as the treatment of the Best Buy debt and the $7,000 equalizing award. Ms. Haney also asserted that the plan is not feasible because the debtor has disposable income with which to make plan payments only because he is not paying his $500 a month share of the mortgage. Finally, the objection alleged that the debtor, by his post-petition conduct, has demonstrated that he is using his bankruptcy filing as a "weapon" in the couple's divorce, which constitutes a bad faith filing. As evidence of the debtor's bad faith, Ms. Haney cites to correspondence between Ms. Haney's divorce attorney and the debtor (who is no longer represented by counsel in the state court), pleadings filed in the divorce case, and a motion for an expedited hearing filed in this case. Doc. # 38, Attachment A.

<u>Discussion</u>

A.

Although chapter 13 allows a financially-distressed debtor to restructure debts and to repay creditors out of future income under court protection and supervision, the manner in which debts may be treated is subject to restrictions imposed by the Bankruptcy Code. Among the requirements for confirmation is that priority claims, including domestic support obligations,

4

must be paid in full, as must secured claims if the debtor proposes to keep the collateral. § 506(a)(1), 1322(a)(2); 1325(a)(5), Bankruptcy Code. Property settlement and equitable distribution debts generally do not have priority and need not be paid in full in a chapter 13 plan. *In re Uzaldin*, 418 B.R. 172 (Bankr. E.D. Va. 2009). Ms. Haney asserts that the current plan, like the prior plan, fails to pay her priority claims in full and fails to specify the treatment of the Best Buy debt or equalizing award.

With respect to its treatment of the Best Buy debt and the $7,000 equalizing award, the amended plan is unquestionably ambiguous. It states merely: "Debtor will pay additional moneys from [sale] proceeds to fund the chapter 13 plan less any debts detailed in the final divorce decree that may need to be paid at closing." Doc. # 31. Although the plan thus acknowledges that there "may" be debts that must be paid at closing under the divorce decree, it studiously avoids specifying which debts would be paid at closing and essentially adopts a "we'll see" (or more precisely, perhaps, a "we'll litigate") stance. The debtor's schedules shed no further light on the intended treatment of the debts, as Ms. Haney and Best Buy are both listed as unsecured creditors without priority.[1] (Doc. # 34). Moreover, in the debtor's "Motion to Determine the Status of the Automatic Stay" (Doc. # 34), he states that he scheduled the equalizing award as an unsecured debt and that he thought it would be paid through the chapter 13 plan with other unsecured claims. Although he does not mention the Best Buy debt in that motion, given that he listed it in schedule F and failed to specify its payment in section 11, it seems likely that he intended it to be paid with other allowed unsecured claims through the plan.

---

[1] The motion explains that the $11,240.10 scheduled unsecured claim held by Marina Haney included the $7,000 equalizing award and $4,240.10, which was one-half of a brokerage account the debtor was required to divide with Ms. Haney under the divorce decree.

5

Ms. Haney asserts that this treatment is improper since the final divorce decree created an equitable lien rendering these debts payable out of the proceeds of the sale of the marital residence.

There can be little question that equitable liens are recognized under Virginia law. *Hoffman v. First Nat'l Bank of Boston*, 205 Va. 232, 135 S.E.2d 818 (1964). As explained by the then-Supreme Court of Appeals of Virginia,

> An equitable lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation, or is declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings.

Id. at 237, 135 S.E.2d at 822 (quoting *Noremac, Inc. v. Centre Hill Court*, 164 Va. 151, 162, 168 S.E. 877, 879-80). Whether the final decree entered by the Fairfax County Circuit Court effectively charged the debtor's undivided half-interest in the real estate with the repayment of the Best Buy debt and $7,000 equalizing award is a legal issue, requiring that the language of the decree be construed in the context of the issues framed by the pleadings. The relevant language of the divorce decree is as follows:

> 6. MONETARY AWARD:
> The wife is hereby awarded a lump sum in the amount of $7,000.00 to be paid to her at closing from husband's share of the proceeds from the sale of the marital residence.
>
> 7. DEBTS:
> A. The Best Buy Account with a balance of $4,208.00 is a marital debt. Husband shall pay $1,803.00 and the wife shall pay $2405.00. Said amounts shall be paid from each party's respective shares of the proceeds from the sale of the marital residence.

Decree at 6. The language of the decree effectively charged the sales proceeds by requiring that the equalizing award and the Best Buy debt be paid specifically from them. With respect to each debt the decree is unambiguous. As to the equalizing award the divorce decree states both where the money will be paid from ("husband's share of the proceeds") and the time at which it will be

paid ("at closing").  The divorce decree uses language of command when it states that the debtor "shall" pay a portion of the Best Buy debt from his proceeds of the sale of the home.  Because the court concludes that the divorce decree creates an equitable lien on the sales proceeds, a chapter 13 plan may not be confirmed unless it specifies that those debts will be paid from the debtor's sale proceeds.

B.

The next objection raised by Ms. Haney is that the debtor cannot simply defer payment of his $500 per month contribution to the marital residence mortgage until the house is sold.  Whether the such a treatment of this obligation—which the court has already held is a domestic support obligation that must be paid in full—is proper is a close question.  Section 1325(a), Bankruptcy Code lists the requirements for confirmation of a chapter 13 plan and at subsection (8) states that a plan may be confirmed if among other things

> the debtor *has paid* all amounts that are required to be paid under a domestic support obligation and that *first become payable after the date of the filing of the petition* if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligations.

§ 1325(a)(8), Bankruptcy Code (emphasis added).  Here the debtor candidly admits that he is not making his required share of the mortgage payments and will not do so until the house sells.  He contends, however, that this does not prejudice Ms. Haney, because he will pay all late fees and other charges applied against the account from his proceeds of the sale of the marital residence.  The problem is that § 1325(a) is not phrased in terms of prejudice or lack of it.  What is clearly commands—and allows no apparent exceptions—is that the debtor "has paid" all amounts that first became payable as a domestic support obligations after the filing of the petition.  In this case, the debtor has not, and the court can find no authority for the proposition that simply

7

because the plan calls for the missed payments to be made at some future date, the clear language of § 1325(a)(8) can be ignored.

But even if the statutory language could be read to allow some brief period for the debtor to come into compliance, the treatment proposed by the present plan is too tenuous to approve because there is no guarantee that the mortgage holder, ING, will continue to accept partial payments. Additionally, there is no assurance as to when the house will actually sell or how much it will sell for. A rough calculation alone raises some concerns. The divorce decree states that the stipulated value of the house is $519,900, and Mr. Haney testified at the first confirmation hearing that it was currently listed for sale at $519,000. Decree at 3. The first deed of trust has a balance of roughly $330,000. Assuming 10% in costs of sale (closing costs, commissions, and other fees) this leaves about $137,100 to split among the debtor and Ms. Haney, or $68,550 for each of them. From these funds the debtor must pay $7,000 to Ms. Haney and $1,803.00 on the Best Buy debt. What is left is $59,747.00, of which he plans to pay $55,000 into his chapter 13 plan, leaving a little over $4,700. Mr. Haney has not been making his share of the mortgage payment since at least January. This means his obligation on his share of the mortgage is already nearly equal to what he would have left of his sales proceeds.[2] This does not include any additional interest, late charges and fees.

---

[2] If he owes $500 a month since January, as of the date of this opinion his obligation is now $4,000 without fees, interest, and other charges.

In short, there is no telling when the domestic support obligation will actually be paid and whether the debtor will have enough money from the sales proceeds to both pay the domestic support obligation and the lump sum payment into his plan. Under these circumstances, the debtor's amended plan which holds payment of his domestic support obligation hostage to the sale of the house fails to comply with §1325(a)(8) and so does not satisfy the requirements for plan confirmation.

C.

The correspondence between the debtor and his former wife's divorce attorney raises troubling questions about the debtor's good faith in filing this chapter 13 case. A chapter 13 petition may be dismissed if filed in bad fath. §1307(c), Bankruptcy Code; *In re Love*, 957 F.2d 1350 (7th Cir. 1992). Permitting only cases commenced in good faith to go forward "prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes." *In re Kestell*, 99 F.3d 146, 147 (4th Cir. 1996) (quoting *In re Little Creek Dev. Co.*, 799 F.2d 1068, 1072 (5th Cir. 1986).

As Judge Mayer of this court recently explained,

> In determining whether a chapter 13 petition was filed in bad faith, the Fourth Circuit follow the factors discussed in *In re Love*, 957 F.2d 1350 (7th Cir. 1992). *See In re Kestell*, 99 F.3d 146, 148 (4th Cir. 1996). The test for bad faith looks to the totality of the circumstances and contains both objective and subjective components. The underlying inquiry is based on fundamental fairness. The non-exhaustive list of the factors includes: the nature of the debt; whether the debt would be nondischargeable in a chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors. The burden of demonstrating bad faith is on the moving party. *In re Love*, 957 F.2d 1355.

*In re Uzalidin*, 418 B.R. at 174. Courts have dismissed bankruptcy petitions where debtors have sought to favor some creditors at the detriment of others. *In re Kestell*, 99 F.3d 146 (4th Cir.

1996) (case dismissed as a bad faith filing where the bankruptcy court found that debtor's sole purpose was to avoid payment to his former wife and to pay all other creditors); *In re Love*, 957 F.2d 1350 (7th Cir. 1992) (avoiding tax debt).

At the confirmation hearing on the amended plan, Ms. Haney brought to the court's attention correspondence between the debtor and Ms. Haney's divorce attorney, Kate Fogarty. On April 12, 2010, Ms. Fogarty contacted the debtor regarding the division of certain investment accounts pursuant to the divorce decree. In the email, Ms. Fogarty stated that she received an order from this court granting partial relief from the automatic stay to proceed with the division of the accounts. Doc. # 38 Attach. Mr. Haney's response chastises Ms. Fogarty for contacting him and asserts that the email itself may be in violation of the automatic stay. He also suggests that asking him to prepare the necessary forms for division violates the stay. He then states, "I will be directing my bankruptcy attorneys to seek remedy against you, your firm, and/or your client, as appropriate, for violating the scope of the automatic stay." Doc. # 38 Attachment A at 2.

On May 4, 2010, an order was entered to clarify the intent of the prior order. Order Granting Further Relief From Automatic Stay (Doc. #32). On May 5, 2010, Ms. Fogarty again emailed Mr. Haney regarding the division of certain marital assets. She specifically referenced the May 4, 2010, order permitting her to communicate with Mr. Haney and requests that he bring certain documents with him to an upcoming hearing. *Id.* at 5. Mr. Haney responded the next day and stated that the debt Ms. Fogarty referred to her in her previous email was listed as an unsecured debt in his bankruptcy case and that relief from the stay was not granted as to it. *Id.* at 4. He also states that he believes other retirement accounts Ms. Fogarty referred to her in her email were still covered by the automatic stay.

Although the tone of Mr. Haney's correspondence with Ms. Fogarty strongly suggests that he is all too quick to invoke his bankruptcy status to derail enforcement of even those parts of the divorce decree that the court has ruled are not subject to the automatic stay, his reckless mischaracterization of this court's order modifying the automatic stay, while censurable and certainly a factor to be considered, is not sufficient, standing alone, for the court to find that the case was filed in bad faith. At 86 cents on the dollar, his plan proposes to pay a fairly high dividend to his unsecured creditors. Although Ms. Haney holds the largest claim, and her divorce attorney the second, the debtor also has substantial indebtedness to his own divorce attorney, and has substantial credit card and tax debt. As a result, the court is unable to find that the debtor filed for chapter 13 protection solely to avoid his obligations to his former wife as opposed to fairly addressing all of this debts. The fact that his petition was filed just one month after the entry of the final divorce decree certainly does not weigh in his favor, but it is also not enough to tip the scales.

### D.

Even though the case may not have been filed in bad case, it is nevertheless fair to ask whether the debtor is actually in a position to propose a confirmable plan. Among the grounds for dismissal of a chapter 13 case is denial of confirmation coupled with denial of a request for additional time for filing another plan. § 1307(c)(5), Bankruptcy Code. In this district, a chapter 13 debtor whose plan is denied confirmation is normally allowed 21 days in which to file a modified plan. Loc.Bankr.R. 3015-2(H). The difficulty here, however, is that any modified plan, to be confirmable, would at a very minimum not only have to address payment of the $7,000 equalizing award and the Best Buy debt out of the real estate proceeds, but more importantly would also have to provide for full payment, as of the effective date of the plan or

promptly thereafter, of the missed $500 per month mortgage payments that became due since the filing of the case. Indeed, the debtor's failure to have made those payments is an independent basis for dismissing the case. § 1307(c)(11), Bankruptcy Code. Based on the debtor's schedules, it is difficult to see how he could bring himself current on the required contribution to the mortgage payments, but perhaps he could do so out of his half of the divided investment accounts. In any event, the court is willing to give the debtor one additional opportunity to propose a confirmable plan, but in the event the next plan is not confirmed, the court will likely deny confirmation without leave to amend and will dismiss the case.

Separate orders will be entered denying confirmation of the present plan and denying the motion to dismiss the case.

Date: _____    _____
                                          Stephen S. Mitchell
Alexandria, Virginia                      United States Bankruptcy Judge

Copies to:

James Christopher Haney
3119 15th Street S.
Arlington, VA 22204
Debtor

Tommy Andrews, Jr., Esquire
Tommy Andrews, Jr. P.C.
122 North Alfred St.
Alexandria, VA 22314
Counsel for the debtor

Jeffrey A. Vogelman, Esquire
Thomas, Ballenger, Vogelman & Turner, P.C.
124 South Royal Street
Alexandria, VA 22314
Counsel for Marina Haney

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
Chapter 13 trustee